United States District Court
Middle District of Florida
Jacksonville Division

**AL AMJAD LIMITED,**

 *Plaintiff,*

v.                     No. 3:16-CV-234-J-PDB

**OCEAN MARINE ENGINES, LLC,**

 *Defendant.*

---

# Order Granting in Part and Denying in Part
# Motion for Default Judgment

Al Amjad Limited alleges Ocean Marine Engines, LLC, ("OME") breached contracts, committed fraud, and violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–213. Doc. 8. Before the Court is Al Amjad's motion for default judgment. Doc. 39.

## I.   Background

Al Amjad filed an amended complaint. Doc. 8. The clerk entered default against OME. Doc. 12. OME later moved to set aside default, Doc. 15, and to dismiss the amended complaint based on lack of subject-matter jurisdiction, improper venue, failure to sufficiently plead fraud, and failure to state a claim under the FDUTPA upon which relief may be granted, Doc. 18. The Court granted the motion to set aside default and accepted as filed the motion to dismiss the amended complaint. Doc. 25.

OME's counsel moved to withdraw. Doc. 30. The Court granted the motion and directed OME to obtain new counsel. Doc. 33. OME did not respond. Al Amjad therefore moved for an order directing OME to show cause why default judgment should not be entered against it, Doc. 38, and later moved for default judgment, Doc. 39. The Court granted Al Amjad's motion for an order to show cause in part and

directed OME to show cause why the Court should not impose sanctions, including directing the clerk to strike the motion to dismiss and again enter default. Doc. 40. OME did not respond. Finding it had failed to otherwise defend the action through counsel or comply with the Court's order directing new counsel to appear, the Court directed the clerk to strike the motion to dismiss and again enter default. Doc. 41. The clerk entered default, Doc. 42, and the Court deemed the motion for default judgment renewed. Doc. 41.

With the motion for default judgment, Al Amjad provides a declaration from its representative, Konstantin Yudin, supporting the complaint allegations and a demand letter from its counsel. Docs. 39-1, 39-2. Al Amjad seeks $134,922.35: $130,162.50 in damages and $4759.85 in prejudgment interest through December 1, 2016.[1]

## II. Pleading Allegations

Al Amjad is a United Arab Emirates corporation that builds yachts. Doc. 8 ¶¶ 1, 5. OME is a Florida limited liability company that purports to sell marine engines and transmissions. Doc. 8 ¶¶ 2, 6.

In January 2015, OME offered to sell Al Amjad two new C-18 Caterpillar engines with upgrades. Doc. 8 ¶ 10. In February 2015, OME offered to sell Al Amjad two new ZF marine transmissions for the engines. Doc. 8 ¶ 19.

In June 2015, Al Amjad agreed to buy the engines, with specified upgrades, for $207,800, with $94,900 to be paid as a deposit and the balance due upon shipping. Doc. 8 ¶¶ 11–13; Doc. 8-1. In August 2015, Al Amjad agreed to buy the transmissions for $38,325, with $19,162.50 to be paid as a deposit. Doc. 8 ¶¶ 20–21; Doc. 8-2. The

---

[1]Because OME filed the motion to dismiss through counsel, the Court carefully considered the arguments it raised before directing the second entry of default. Doc. 41 (footnote). Except for the argument concerning the failure to sufficiently allege fraud (addressed in footnote 8 below), none have merit.

2

transmissions contract directed the wiring of payments to OME's bank account in Jacksonville. Doc. 8-2 at 2. Between July 2015 and August 2015, Al Amjad wired payments to OME totaling $130,162.50, of which $111,000 was allocated to the engines contract and $19,162.50 was allocated to the transmissions contract. Doc. 8 ¶¶ 14, 22.

OME failed to deliver the engines and transmissions, and Al Amjad "sought assurances of [its] performance." Doc. 8 ¶¶ 15, 23. OME responded that Al Amjad could either pay a 25 percent fee to cancel the contracts or pay the balances of the contracts directly to OME's five vendors and make an additional payment for the transmissions. Doc. 8 ¶¶ 15, 23.

"At various times," OME made several misrepresentations to Al Amjad, including that (1) it "or its agents were licensed dealers of Caterpillar machinery or products"; (2) it "was capable of building the Engines and Transmissions as represented in the respective contracts"; (3) it "has experience and has previously built similar marine engines with the specifications desired"; and (4) it "was capable of completing the orders with the specifications made by [Al Amjad] within the timeframe[s] specified." Doc. 8 ¶ 27. OME knew at the time those statements were false and it did not intend to uphold the promises and representations it had made. Doc. 8 ¶ 28.

Because of OME's actions, Al Amjad suffered damages: lost deposits totaling $130,162.50; an increase in cost resulting from its need to buy the products elsewhere; an increase in the cost of completing the yachts for which it intended to use the products; and a loss of income derived from use of the yachts. Doc. 8 ¶¶ 17, 25, 30, 36.

### III. Law Governing Default Judgment

Before obtaining default judgment, a plaintiff must obtain entry of default by showing that the defendant has failed to plead or defend. Fed. R. Civ. P. 55(a). After entry of default, the court or clerk may enter default judgment. Fed. R. Civ. P. 55(b).

By defaulting, a defendant admits the complaint's well-pleaded factual allegations. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Besides considering those admissions, the court may conduct a hearing to conduct an accounting, determine the damages amount, establish with evidence the truth of any allegation, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

Before entering default judgment, a court must ensure it has subject-matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (courts have obligation to ensure subject-matter jurisdiction). The Court must ensure the well-pleaded factual allegations state a claim upon which relief may be granted. *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975). And the court should ensure that it has personal jurisdiction over the defendant. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012) (lack of personal jurisdiction renders judgment void).

## IV. Analysis

### A. *Subject-Matter Jurisdiction*

Under 28 U.S.C. § 1332(a)(2), federal district courts have diversity jurisdiction over any civil case in which the amount in controversy exceeds $75,000 and which is between "citizens of a State and citizens or subjects of a foreign state." Section 1332 requires "complete diversity." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 580 n.2 (1999).

The amended complaint alleges Al Amjad is a citizen of the United Arab Emirates because it was incorporated in the emirate of Ras Al Khaimah, and its principal place of business is in the emirate of Dubai. Doc. 8 ¶ 1. It alleges OME—an LLC—is a Florida citizen because its sole members are Florida citizens. Doc. 8 ¶ 2. And it alleges the amount in controversy exceeds $75,000. Doc. 8 ¶¶ 3, 17, 25, 30, 36.

The Court previously found subject-matter jurisdiction based on those allegations. Doc. 9. In the later filed motion to dismiss, OME clarifies its sole members are Gregory and Eric Slayton, and they are both Georgia citizens. Doc. 18 at 1–2. Whether based on the amended-complaint allegations or dismissal submissions, complete diversity exists because the case is between citizens of a state (Florida or Georgia) and a citizen of a foreign state (United Arab Emirates). The Court has subject-matter jurisdiction.

## B.   *Personal Jurisdiction*

Serving a summons establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). A federal district court sitting in diversity has personal jurisdiction over a defendant if the state's long-arm statute is satisfied and the defendant has sufficient minimum contacts with the forum state to satisfy due process and comport with traditional notions of fair play and substantial justice. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214, 1220 (11th Cir. 1999); *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A defendant's failure to raise the defense of lack of personal jurisdiction in its first motion under Federal Rule of Civil Procedure 12 results in waiver of that defense. Fed. R. Civ. P. 12(h)(1)(A); *accord Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004) ("It is well-settled that lack of personal jurisdiction is a waivable defect, and that a defendant waives any objection to the district court's jurisdiction over his person by not objecting to it in a responsive pleading or a [Rule] 12 motion."). Here, before defaulting, OME moved to dismiss the amended complaint based on matters other than lack of personal jurisdiction.[2] *See generally* Doc. 18. Because it

---

[2] OME's venue challenge did not preserve any challenge to personal jurisdiction. *See Palmer*, 376 F.3d at 1259.

appeared and filed a Rule 12 motion without challenging personal jurisdiction, it waived any objection to personal jurisdiction.

Regardless of waiver, the Court has personal jurisdiction over OME. Under Florida's long-arm statute,[3] a defendant is subject to personal jurisdiction in Florida "for any cause of action arising from … [o]perating, conducting, engaging in, or carrying on a business venture in th[e] state or having an office or agency in th[e] state." Fla. Stat. § 48.193(1)(a)(1).

Al Amjad's claims arise from OME's business in Florida. In his declaration, Yudin stated he negotiated the contracts at OME's Jacksonville office, and OME required payment to its Jacksonville account. Doc. 26-1 at 1–2.

Satisfying Florida's long-arm statute does not automatically satisfy due-process requirements. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). To determine if due process is satisfied, a court considers whether the defendant's contacts with the forum state are related to the plaintiff's cause of action, whether the defendant purposefully availed himself of the privilege of conducting activities within the forum state, and whether exercising personal jurisdiction comports with traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). If the plaintiff establishes the defendant's contacts are related to the cause of action and it has purposefully availed itself of the privilege of conducting activities within the forum state, the burden shifts to the defendant to "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* at 1355 (internal quotation marks omitted). The due process analysis focuses on

---

[3]Al Amjad contends the Court has personal jurisdiction over OME because it "is a Florida entity with its principal place of business within this district." Doc. 39 at 5. Because OME provided a declaration disputing that its principal place of business is in Florida, *see* Doc. 19-1 at 1–2, and Al Amjad provided no authority for the proposition that an entity may be subject to personal jurisdiction in a state solely because it is organized under that state's law, the Court analyzes personal jurisdiction under Florida's long-arm statute.

the defendant's contact with the state itself, not its contact with those who reside in the state. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

Al Amjad presents evidence OME has a Jacksonville office, negotiated the contracts at that office, and demanded payment to its Jacksonville account. Docs. 26-1, 26-2. Those contacts are connected to the claims and demonstrate OME has purposely availed itself of the privilege of conducting activities in Florida. The Court has personal jurisdiction over OME.[4]

## C. Established Claims

### 1. Breach of Contracts

Under Florida law,[5] "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). A contract is created by an offer, acceptance, consideration, and specification of essential terms. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

---

[4]Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). The allegations supporting personal jurisdiction over OME also suffice to establish that a substantial part of the events giving rise to the claims occurred in this district (regardless of whether OME's principal place of business is in Florida, as Al Amjad alleges, Doc. 39 at 5, or Georgia, as OME alleges, Doc. 19-1 at 2). Venue is proper here.

[5]Al Amjad cites Florida law in connection with the request for default judgment on the breach-of-contract claims. Doc. 39 at 6. Under Florida law, absent a contractual provision specifying the governing law, a contract other than for performing services is governed by the law of the state in which the contract was made. *Shaps v. Provident Life & Accident Ins. Co.*, 826 So. 2d 250, 254 n.3 (Fla. 2002). A contract is "made" where the last act necessary to complete it is performed. *Jemco, Inc. v. United Parcel Serv., Inc.*, 400 So. 2d 499, 500 (Fla. 3d DCA 1981). Here, although it is unclear where the last acts necessary to complete the contracts were performed, general principles of contract law are similar regardless of which state's law applies. Moreover, in the motion to dismiss, OME did not indicate it believed any law other than Florida law would apply to the breach-of-contract claims. *See generally* Doc. 18. For those reasons, the Court applies Florida law.

Here, the well-pleaded factual allegations state claims for breach of contract upon which relief may be granted. The amended complaint alleges that OME offered to sell, and Al Amjad agreed to buy, two engines and two transmissions under terms specified in OME's invoices; OME failed to deliver those goods; and Al Amjad suffered damages because it had paid deposits on the contracts totaling $130,162.50 and received neither the goods nor a refund. Doc. 8 ¶¶ 10–17, 19–25. By failing to respond, OME has admitted those allegations. *See Eagle Hosp. Physicians*, 561 F.3d at 1307. Al Amjad is entitled to default judgment on the claims for breach of the contracts (counts I and II).

2. *FDUTPA*

The FDUTPA makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). An act or practice is deceptive if "likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *State v. Beach Blvd. Auto., Inc.*, 139 So. 3d 380, 387 (Fla. 1st DCA 2014). An act or practice is "unfair" if it causes consumer injury that is substantial, not outweighed by any countervailing benefits to consumers or competition, and one that consumers themselves could not have reasonably avoided. *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014). An injury is reasonably avoidable if consumers "have reason to anticipate the impending harm and the means to avoid it." *Orkin Extermination Co., Inc. v. FTC*, 849 F.2d 1354, 1365–66 (11th Cir. 1988). A claim for damages under the FDUTPA has three elements: (1) a deceptive or unfair act or practice, (2) causation, and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

The well-pleaded factual allegations state a claim under the FDUTPA upon which relief may be granted. The amended complaint alleges OME engaged in unfair acts when, after it failed to deliver the engines and transmissions in accordance with the contracts, and in response to Al Amjad's request for assurances, it told Al Amjad it could either pay a 25 percent fee to cancel the orders or pay the contract balances

directly to OME's vendors and make an additional payment for the transmissions.⁶ Doc. 8 ¶ 34. Because the contracts did not expressly provide for either alternative, Al Amjad could not have avoided injury because it could not have anticipated OME's actions. The amended complaint alleges that, because of those acts, Al Amjad incurred damages in the form of the payments it had already made on the contracts for goods it would not receive without acquiescing to OME's new demands and forgoing the opportunity to inspect the goods.⁷ *See* Doc. 8 ¶ 36. By failing to respond, OME has admitted those allegations. *See Eagle Hosp. Physicians*, 561 F.3d at 1307. Al Amjad is entitled to default judgment on the FDUTPA claim (count IV).⁸

---

⁶The amended complaint also alleges OME violated the FDUTPA by making the misrepresentations identified in the fraud claim. Doc. 8 ¶ 35 (referring to ¶ 27). Courts disagree on whether allegations of deceptive practices under the FDUTPA must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Compare Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (holding Rule 9(b) applies to allegations of fraud); *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1343 n.9 (S.D. Fla. 2011) (holding plaintiff failed to satisfy Rule 9(b) in alleging fraud as basis for FDUTPA claim); *Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (unpublished) (holding Rule 9(b) "applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law," including a FDUTPA claim apparently based on alleged fraudulent conduct; citing cases), *with Harris v. Nordyne, LLC*, No. 14-CIV-21884-BLOOM/Valle, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014) (unpublished) (holding "the requirements of Rule 9(b) categorically do not apply to claims under FDUTPA"; citing cases).

The Court need not decide whether Rule 9(b) applies to the FDUTPA claim to the extent it is based on OME's alleged misrepresentations because the claim is sufficient to the extent it is based on OME's alleged unfair conduct in response to Al Amjad's request for assurances.

⁷"A party cannot recover for alleged misrepresentations that are adequately dealt with or expressly contradicted in a later written contract." *TRG Night Hawk Ltd. v. Registry Dev. Corp.*, 17 So. 3d 782, 784 (Fla. 2d DCA 2009). In the motion to dismiss, OME argued that limitation applies here. Doc. 18 at 6−7. It does not because the alleged FDUTPA violations concern extracontractual demands.

⁸Under Florida law, the elements of a claim for fraudulent misrepresentation are (1) the defendant made a false statement concerning a material fact; (2) when it made the statement, it either knew it was false or knew it did not know whether it was true; (3) it intended that the plaintiff rely and act on the statement; and (4) the plaintiff justifiably relied

9

### D. Damages

Default judgment "may not be entered without a hearing [on damages] unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). No hearing is required if "essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

Here, the essential evidence relating to damages is before the Court, making a hearing unnecessary. According to the amended complaint and wire confirmations

---

on the statement to its detriment. *U.S. Bank N.A. v. Rios*, 166 So. 3d 202, 210 (Fla. 2d DCA 2015).

Federal Rule of Civil Procedure 9(b) supplements the general pleading standard in Federal Rule of Civil Procedure 8(a). *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015). It requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), "a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Failure to satisfy Rule 9(b) is a ground for dismissal. *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

As argued by OME in the motion to dismiss, Doc. 18 at 4–5, the amended complaint does not allege fraud with the particularity required by Rule 9(b). Although it arguably alleges the general content of the statements, how they misled Al Amjad, and what OME gained by the fraud, it does not identify the time or place of any statement, the person responsible for it, or the precise content of the statements. Because the fraud claim is not sufficiently specific, default judgment on the claim is unwarranted.

Dismissal of the fraud claim will not impact Al Amjad's damages request because it is the same regardless. But before dismissing a claim on its own motion upon finding a plaintiff has failed to state a plausible claim for relief entitling it to default judgment, a court "must provide the plaintiff with notice of its intent to dismiss and an opportunity to respond." *Surtain v. Hamlin Terr. Found.*, 789 F.3d 1239, 1248–49 (11th Cir. 2015). The Court will give Al Amjad an opportunity to file either a memorandum explaining why Rule 9(b) should not apply when considering whether to enter default judgment on the fraud claim or a motion for leave to amend the claim in accordance with Rule 9(b). If, by April 24, 2017, it has not filed either a memorandum or a motion for leave to amend, the Court will deem the claim dismissed without prejudice and will direct the clerk to enter final judgment in the amounts requested.

attached to Yudin's declaration, Al Amjad paid OME at least $130,162.50 for the engines and transmissions but never received them. Doc. 8 ¶¶ 14, 17, 22, 25, 36; Doc. 39-1 at 7–13.[9] Al Amjad also requests prejudgment interest at an annual rate of 4.75 percent. Doc. 39 at 10–11.[10]

Under Florida law, a plaintiff is entitled to prejudgment interest as a matter of law. *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007). "The computation of prejudgment interest is a mathematical computation and a purely ministerial duty. No finding of fact is needed, and no discretion is permitted." *Id.* Absent a written agreement setting an interest rate, a statutory rate applies. Fla. Stat. § 687.01; *accord Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 572 (11th Cir. 1991). Interest accrues from the demand for payment. *Jones Prods. Corp. v. SAC Constr. Co.*, 495 So. 2d 800, 801 (Fla. 3d DCA 1986).

Because no written agreement sets the interest rate, the statutory rate applies. The annual rate in effect on February 24, 2016, when Al Amjad first demanded payment, was 4.75 percent (.0129781 percent per day). *See* Fla. Chief Fin. Officer, Div. of Accounting and Auditing, *Judgment Interest Rates*, *available at* http://www.myfloridacfo.com/Division/AA/Vendors/default.htm (last visited April 14, 2017). Under Florida Statutes section 55.03(3), the rate is adjusted annually on January 1 "in accordance with the interest rate in effect on that date." The rate in effect on January 1, 2017, was 4.97 percent (.01361644 percent per day), so that rate applies from January 1, 2017, to the date of the Court's judgment. Al Amjad is

---

[9]The wire confirmations indicate Al Amjad paid OME $114,000 (not $111,000) in connection with the engines contract and $19,162.50 in connection with the transmissions contract, for a total of $133,162.50 (not $130,162.50). *See* Doc. 39-1 at 7–13. Because Al Amjad seeks less in damages than the evidence shows it paid, the discrepancy does not warrant denying the motion.

[10]Al Amjad states it seeks attorney's fees and costs in connection with the FDUTPA claim but fails to provide evidence or argument to support the request. *See* Doc. 39 at 10. Because it does not include attorney's fees and costs in the discussion of damages or the affidavit of sum certain, *see* Doc. 39 at 10–11, the Court will not award attorney's fees and costs at this time.

11

entitled to $5253.60 in prejudgment interest from February 24, 2016, through December 31, 2016, and prejudgment interest at an annual rate of 4.97 percent from January 1, 2017, through the judgment date.

## V. Conclusion

The Court **grants** the motion for default judgment, Doc. 39, on counts I, II, and IV of the amended complaint, Doc. 8, and **denies** the motion on count III. Absent a memorandum or motion for leave to amend filed by April 24, 2017, the Court will deem count III dismissed without prejudice and will direct the clerk to enter final judgment in the amounts requested.

**Ordered** in Jacksonville, Florida, on April 14, 2017.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: Counsel of record